IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

UNITED STATES OF AMERICA

v.

KEVIN D. WEBSTER

_____/

INDICTMENT

3:14cr93/RV

THE GRAND JURY CHARGES:

### COUNTS ONE THROUGH ELEVEN

### A. INTRODUCTION

At all times material to this Indictment:

1.  Affordable Insurance and Financial Services, LLC ("AIFS"), was a company incorporated in the State of Florida and located in Pensacola, Florida. Defendant **KEVIN D. WEBSTER** was a registered agent of AIFS and was licensed to provide insurance services in multiple states.

2.  Defendant **KEVIN D. WEBSTER** maintained and controlled a bank account for AIFS at U.S. Bank.

3.  United States Liability Insurance Group ("USLI") was an insurance underwriting company located in Pennsylvania.

Returned in open court pursuant to Rule 6(f)

Date: 11-18-14

_Elizabeth M. [signature]_
United States Magistrate Judge

4.      Wells Fargo Advisors, LLC ("WFA"), was a non-bank affiliate of Wells Fargo Bank that provided various financial services to clients with branch locations throughout the United States.

5.      Starting in approximately 2007, financial advisors at the WFA branch located in Westlake Village, California, began referring clients to defendant **KEVIN D. WEBSTER** at AIFS for insurance services, including homeowners, automobile, jewelry, and umbrella (or excess liability) insurance policies.

### B. THE CHARGE

Between on or about November 19, 2009, and on or about October 5, 2012, in the Northern District of Florida and elsewhere, the defendant,

### KEVIN D. WEBSTER,

did knowingly and willfully devise and intend to devise a scheme to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing this scheme did knowingly cause wire communications to be transmitted in interstate commerce.

### C. THE SCHEME TO DEFRAUD

It was part of the scheme that:

1.      Defendant **KEVIN D. WEBSTER** falsely and fraudulently represented that he had obtained umbrella insurance with USLI for "high profile" clients referred to him by WFA when in fact, he had not. **WEBSTER** did not secure or attempt to secure umbrella insurance policies with USLI for these clients, but assured WFA and its clients that the policies had been obtained and coverage was in effect.

2.      Instead, defendant **KEVIN D. WEBSTER** converted client payments that were meant for umbrella policy premiums to his own personal use. Between on or about March 11, 2008, and on or about August 24, 2011, **WEBSTER** electronically deposited into his U.S. Bank account approximately $140,000 in payments from clients J.B.1, J.B.2, G.C., D.F., A.H., D.H., B.M., M.P., S.S., M.T., and S.W., which were intended by these clients to be used to pay for premiums for umbrella insurance policies with USLI, but were not applied to pay such premiums by **WEBSTER**.

### *J.B.1*

3.      On or about April 2, 2009, WFA issued an authorized payment of $3,167.00 from J.B.1 to AIFS for a $2 million umbrella policy premium.

4.      On or about January 20, 2010, WFA issued an authorized payment of $3,167.00 from J.B.1 to AIFS for a $2 million umbrella policy premium.

5.      On or about June 1, 2010, WFA issued an authorized payment of $2,030.00 from J.B.1 to AIFS for an increase in umbrella coverage to $5 million.

6.      On or about September 16, 2010, defendant **KEVIN D. WEBSTER** emailed to R.K., an employee of WFA, a Certificate of Liability Insurance dated August 19, 2010, for a one-year, $5 million umbrella insurance policy with USLI effective March 31, 2010, for J.B.1 for a $5,197.00 premium.

7.      On or about December 16, 2010, WFA issued an authorized payment of $5,197.12 from J.B.1 to AIFS for an umbrella policy renewal premium.

8.      On or about November 16, 2011, WFA issued an authorized payment of $5,197.12 from J.B.1 to AIFS for an umbrella policy renewal premium.

### *J.B.2*

9. On or about January 30, 2009, WFA issued an authorized payment of $1,382.00 from J.B.2 to AIFS for an umbrella policy premium.

10. On or about February 10, 2009, defendant **KEVIN D. WEBSTER** emailed to R.K. an application for a $1 million personal umbrella policy with USLI effective February 5, 2009, for J.B.2, which was signed by J.B.2 and faxed back to **WEBSTER** on or about the same date.

11. On or about September 14, 2009, defendant **KEVIN D. WEBSTER** emailed to R.K. a Certificate of Liability Insurance dated September 10, 2009, for a one-year, $1 million umbrella insurance policy with USLI effective January 30, 2009, for J.B.2 for a $1,382.00 premium.

12. On or about September 16, 2009, WFA issued an authorized payment of $3,556.00 from J.B.2 to AIFS for a $3 million increase in umbrella policy coverage.

13. On or about December 15, 2009, WFA issued an authorized payment of $1,382.00 from J.B.2 to AIFS for an umbrella policy renewal premium.

14. On or about March 1, 2010, defendant **KEVIN D. WEBSTER** emailed to R.K. a Certificate of Liability Insurance dated February 27, 2010, for a one-year, $4 million umbrella insurance policy with USLI effective January 30, 2010, for J.B.2 for a $4,938.00 premium.

15. On or about May 14, 2010, R.K. emailed to J.B.2 a copy of the Certificate of Liability Insurance dated February 27, 2010.

16.  On or about August 19, 2010, WFA issued an authorized payment of $4,938.00 from J.B.2 to AIFS for an umbrella policy renewal premium.

17.  On or about August 20, 2010, defendant **KEVIN D. WEBSTER** emailed to R.K. a Certificate of Liability Insurance dated August 19, 2010, for a one-year, $4 million umbrella insurance policy with USLI effective September 16, 2010, for J.B.2 for a $4,938.00 premium.

### G.C.

18.  On or about January 6, 2009, defendant **KEVIN D. WEBSTER** emailed S.T., an employee at WFA, an application for a $1 million personal umbrella policy with USLI for G.C. for a $1,083.00 premium, which was signed by G.C. and faxed back to **WEBSTER** on or about January 7, 2009.

19.  On or about January 9, 2009, WFA issued authorized payments of $1,085.83 and $1,083.00 from G.C. to AIFS.

20.  On or about September 23, 2009, defendant **KEVIN D. WEBSTER** emailed R.K. and C.W., another employee at WFA, a Certificate of Liability Insurance dated September 15, 2009, for a one-year, $1 million umbrella insurance policy with USLI effective January 7, 2009, for a $1,083.00 premium.

21.  On or about March 4, 2010, defendant **KEVIN D. WEBSTER** emailed to R.K. a Certificate of Liability Insurance dated March 1, 2010, for a one-year, $1 million umbrella insurance policy effective with USLI January 7, 2010, for G.C. for a $1,083.00 premium.

22. On or about March 8, 2010, WFA issued an authorized payment of $1,083.00 from G.C. to AIFS for an umbrella policy premium.

23. On or about November 19, 2010, WFA issued an authorized payment of $1,083.00 from G.C. to AIFS for an umbrella policy renewal premium.

24. On or about October 17, 2011, G.C. sent an email to defendant **KEVIN D. WEBSTER,** stating he was going to switch to another insurance agent.

25. On or about October 25, 2011, C.W. emailed G.C. a copy of the Certificate of Liability Insurance dated March 1, 2010, in response to an email requesting information on his current umbrella insurance policy.

### *D.F.*

26. On or about September 1, 2010, WFA issued an authorized payment of $5,197.00 from D.F. to AIFS for the premium on a new umbrella policy.

27. On or about September 2, 2010, defendant **KEVIN D. WEBSTER** sent an email to R.K. stating that D.F.'s umbrella and jewelry policy had been cancelled effective May 15, 2010, but that **WEBSTER** "made sure his umbrella is good" and rewrote D.F. a new $5 million umbrella policy with USLI for a $5,197.00 premium.

28. On or about August 2, 2011, defendant **KEVIN D. WEBSTER** sent an email to R.K. and B.C., **WEBSTER**'s assistant at AIFS, stating that D.F. had a current umbrella insurance policy with USLI but that **WEBSTER** was working to move it to another company.

### D.H.

29. On or about September 14, 2009, defendant **KEVIN D. WEBSTER** emailed to R.K. a Certificate of Liability Insurance dated September 10, 2009, for a one-year, $5 million umbrella policy with USLI effective February 25, 2009, for D.H. for a $5,910.00 premium.

30. On or about December 9, 2009, WFA issued an authorized payment of $5,910.00 from D.H. to AIFS for a $5 million umbrella policy premium.

31. On or about March 4, 2010, defendant **KEVIN D. WEBSTER** emailed to R.K. a Certificate of Liability Insurance dated March 1, 2010, for a one-year, $5 million umbrella insurance policy with USLI effective February 25, 2010, for D.H. for a $5,910.00 premium.

32. On or about September 8, 2010, WFA issued an authorized payment of $5,781.00 from D.H. to AIFS for a $5 million umbrella policy premium.

33. On or about April 29, 2011, WFA issued an authorized payment of $4,193.00 from D.H. to AIFS for a $5 million umbrella policy premium.

### A.H.

34. On or about July 15, 2009, WFA issued an authorized payment of $1,366.00 from A.H. to AIFS for an umbrella policy premium.

35. On or about July 6, 2010, WFA issued an authorized payment of $3,179.00 from A.H. to AIFS for a $3 million umbrella policy premium.

36. On or about November 10, 2010, defendant **KEVIN D. WEBSTER** emailed to R.K. and C.W. a Certificate of Liability Insurance dated November 10, 2010,

for a one-year, $3 million umbrella insurance policy with USLI effective June 19, 2010, for A.H.

37. On or about May 5, 2011, WFA issued an authorized payment of $3,179.00 from A.H. to AIFS for a $3 million umbrella policy premium.

### B.M.

38. On or about May 12, 2010, WFA issued an authorized payment of $1,282.00 from B.M. to AIFS for an umbrella policy premium.

39. On or about May 25, 2010, J.C., an employee of WFA, faxed an application for a $1 million umbrella insurance policy with USLI through defendant **KEVIN D. WEBSTER** to B.M., which B.M. signed and faxed back to WFA on or about May 27, 2010.

40. On or about August 11, 2010, defendant **KEVIN D. WEBSTER** emailed to R.K. a Certificate of Liability Insurance dated August 11, 2010, for a one-year, $1 million umbrella insurance policy with USLI effective May 12, 2010, for B.M. for a $1,287.00 premium.

### M.P.

41. On or about November 21, 2008, WFA issued an authorized payment of $5,588.00 from M.P. to AIFS for a USLI umbrella policy renewal premium.

42. On or about September 14, 2009, defendant **KEVIN D. WEBSTER** emailed to R.K. a Certificate of Liability Insurance dated September 10, 2009, for a one-year, $5 million umbrella insurance policy with USLI effective January 4, 2009, for M.P. for a $5,393.00 premium.

43. On or about September 25, 2009, WFA issued an authorized payment of $5,588.00 from M.P. to AIFS for a USLI umbrella policy renewal premium.

44. On or about March 1, 2010, defendant **KEVIN D. WEBSTER** emailed to R.K. a Certificate of Liability Insurance dated February 27, 2010, for a one-year, $5 million umbrella insurance policy with USLI effective January 4, 2010, for M.P. for a $5,393.00 premium.

45. On or about October 14, 2010, WFA issued an authorized payment of $5,588.00 from M.P. to AIFS for a USLI $5 million umbrella policy renewal premium.

46. On or about September 23, 2011, WFA issued an authorized payment of $5,588.00 from M.P. to AIFS for a USLI $5 million umbrella policy renewal premium.

### *S.S.*

47. On or about February 12, 2009, WFA issued an authorized payment from S.S. to AIFS of $2,806.00.

48. On or about September 14, 2009, defendant **KEVIN D. WEBSTER** emailed to R.K. a Certificate of Liability Insurance dated September 10, 2009, for a one-year, $2 million umbrella insurance policy with USLI effective March 14, 2009, for S.S. for a $2,511.00 premium.

49. On or about December 26, 2009, WFA issued an authorized payment of $2,806.00 from S.S. to AIFS for a $2 million umbrella policy renewal premium.

50. On or about March 12, 2010, defendant **KEVIN D. WEBSTER** emailed to R.K. a Certificate of Liability Insurance dated March 1, 2010, for a one-year, $2

million umbrella insurance policy with USLI effective March 14, 2010, for S.S. for a $2,511.00 premium.

51. On or about November 24, 2010, WFA issued an authorized payment of $2,806.00 from S.S. to AIFS for a $2 million umbrella policy renewal premium.

52. On or about November 3, 2011, WFA issued an authorized payment of $2,806.00 from S.S. to AIFS for a $2 million umbrella policy renewal premium.

### *M.T.*

53. On or about September 14, 2009, defendant **KEVIN D. WEBSTER** emailed to R.K. a Certificate of Liability Insurance dated September 10, 2009, for a one-year, $5 million umbrella insurance policy with USLI effective June 4, 2009, for M.T. for a $5,197.00 premium.

54. On or about February 4, 2010, WFA issued an authorized payment of $5,197.00 from M.T. to AIFS for a $5 million umbrella policy renewal premium.

55. On or about June 28, 2010, WFA issued an authorized payment of $5,968.12 from M.T. to AIFS for a $5 million umbrella policy renewal premium.

56. On or about July 7, 2010, defendant **KEVIN D. WEBSTER** emailed to R.K. a Certificate of Liability Insurance dated June 4, 2010, for a one-year, $5 million umbrella insurance policy with USLI effective June 4, 2010, for M.T. for a $5,197.00 premium.

57. On or about March 11, 2011, WFA issued an authorized payment of $5,197.00 from M.T. to AIFS for a $5 million umbrella policy renewal premium.

<u>S.W.</u>

58.     On or about March 11, 2008, WFA issued an authorized payment of $5,289.00 from S.W. to AIFS.

59.     On or about December 23, 2008, WFA issued an authorized payment of $5,289.00 from S.W. to AIFS.

60.     On or about December 15, 2009, WFA issued an authorized payment of $5,289.00 from S.W. to AIFS for a $5 million umbrella policy renewal premium.

61.     On or about March 12, 2010, defendant **KEVIN D. WEBSTER** emailed to R.K. a Certificate of Liability Insurance dated March 1, 2010, for a one-year, $5 million umbrella insurance policy with USLI effective March 11, 2010, for S.W.

62.     On or about June 24, 2010, defendant **KEVIN D. WEBSTER** emailed to R.K. and C.W. a Certificate of Liability Insurance dated June 23, 2010, for a one-year, $5 million umbrella insurance policy with USLI effective March 11, 2010, for S.W.

63.     On or about September 29, 2010, WFA issued an authorized payment of $5,289.00 from S.W. to AIFS for a $5 million umbrella policy renewal premium.

64.     On or about August 24, 2011, WFA issued an authorized payment of $5,289.00 from S.W. to AIFS for a $5 million umbrella policy renewal premium.

### D. THE EXECUTION

On or about the dates listed below, in the Northern District of Florida, the defendant,

**KEVIN D. WEBSTER,**

for the purpose of executing this scheme to defraud, did knowingly cause the following wire communications to be transmitted in interstate commerce:

| COUNT | DATE | EMAIL TO | REGARDING |
|---|---|---|---|
| One | March 1, 2010 | R.K. | M.P. |
| Two | March 1, 2010 | R.K. | J.B.2 |
| Three | March 4, 2010 | R.K. | G.C. |
| Four | March 4, 2010 | R.K. | D.H. |
| Five | March 12, 2010 | R.K. | S.W. |
| Six | March 12, 2010 | R.K. | S.S. |
| Seven | July 7, 2010 | R.K. | M.T. |
| Eight | August 11, 2010 | R.K. | B.M. |
| Nine | September 2, 2010 | R.K. | D.F. |
| Ten | September 16, 2010 | R.K. | J.B.1 |
| Eleven | November 10, 2010 | R.K. and C.W. | A.H. |

In violation of Title 18, United States Code, Section 1343.

### CRIMINAL FORFEITURE

The allegations in Counts One through Eleven of this Indictment are realleged and incorporated herein for the purpose of alleging forfeiture to the United States of America.

From the defendant's engagement in the violations alleged in Counts One through Eleven of this Indictment, the defendant,

### KEVIN D. WEBSTER,

shall forfeit to the United States of America pursuant to Title 18, United States Code, Section 981(a)(1)(D), and Title 28, United States Code, Section 2461(c), any and all of the defendant's right, title and interest in any property, real and personal, constituting, and derived from, proceeds traceable to such offenses.

If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

    i.    cannot be located upon the exercise of due diligence;

    ii.    has been transferred or sold to, or deposited with, a third party;

    iii.    has been placed beyond the jurisdiction of this Court;

    iv.    has been substantially diminished in value; or

    v.    has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property.

A TRUE BILL:

**Redacted**

FOREPERSON

11-18-2014
DATE

PAMELA C. MARSH
United States Attorney

ALICIA H. KIM
Assistant United States Attorney

13